UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALEXANDER GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-cv-1931 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| CITY OF EVANSTON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

An anonymous caller gave an ominous tip to the City of Evanston in a 911 call. A white man in a dark coat and jeans was carrying a firearm near a beach.

Officers sprang into action, and they soon encountered Alexander Gray at the location. He was wearing an outfit that matched the description, more or less. He was holding a black object, too. But Gray is a black man.

The officers pulled out their handguns, and pointed them at Gray. Before long, they placed him in handcuffs, patted him down, and searched his pockets. They looked for a gun, and came up empty. After finding no gun, the officers let him go. When it was all said and done, Gray was detained for about seven minutes.

Gray responded by suing the City of Evanston and several Evanston police officers, alleging excessive force and an unreasonable search. After discovery, Gray moved for summary judgment on liability. *See* Pl.'s Mtn. for Summ. J. (Dckt. No. 30).

For the reasons that follow, Gray's motion for summary judgment is denied.

### Background

In March 2021, the Evanston Police Department received an anonymous tip from a 911 call. The tipster reported "a white male, approximately 5 feet tall to 6 feet tall, in a dark coat and jeans" carrying a handgun north of the beach in Evanston, Illinois. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 5 (Dckt. No. 41-2); Pl.'s Resp. to Defs.' Statement of Additional Facts, at ¶¶ 4, 6 (Dckt. No. 48).

At the time of the call, "it was unlawful for any person to carry a firearm in a public park in Evanston." *See* Pl.'s Resp. to Defs.' Statement of Additional Facts, at ¶ 5 (Dckt. No. 48).

Evanston police officers – including Defendants Marcin Kubiak, Michael Kane, Kyle Popp, Daniel Rosenbaum, and Pauline Pogorzelski – responded to the report. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 6 (Dckt. No. 41-2).

At the time, Plaintiff Gray was in the park north of the beach. And his clothes fit the description. He was wearing a dark coat and jeans. *See* Pl.'s Resp. to Defs.' Statement of Additional Facts, at ¶ 12 (Dckt. No. 48). Gray had a dark cell phone and black headphones on his person. *Id.* at ¶ 20.

Officer Kubiak was the first officer to arrive on the scene. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 8 (Dckt. No. 41-2). Officer Kubiak observed Gray holding a black object in his hand. *See* Pl.'s Resp. to Defs.' Statement of Additional Facts, at ¶ 13 (Dckt. No. 48).

Officer Kubiak walked over to Plaintiff Gray with his gun unholstered. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 9 (Dckt. No. 41-2). Officer Kubiak instructed Gray to put his hands up and get on the ground. *Id.* at ¶ 10.

Officer Kane then arrived on the scene. *Id.* at ¶ 12. He unholstered his firearm and walked toward Gray. *Id.*

Officer Kubiak told Gray: "Do what we tell you and you won't get hurt." *Id.* at ¶ 14. Officer Kane told Gray to put his arms further apart "like Superman." *Id.* Gray followed the officers' directives. *Id.* at ¶ 15. Other officers arrived on the scene. *Id.* at ¶ 16.

Officers Kane and Popp handcuffed Gray. *Id.* at ¶ 18. Officer Pogorzelski explained to Gray that the police had received a call about a man with a gun in the park. *See* Pl.'s Resp. to Defs.' Statement of Additional Facts, at ¶ 26 (Dckt. No. 48).

Officers Kane and Popp patted Gray down. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 22 (Dckt. No. 41-2). Officer Pogorzelski asked if the officers could open Gray's jacket. *See* Pl.'s Resp. to Defs.' Statement of Additional Facts, at ¶ 28 (Dckt. No. 48). Then, Officer Kane searched Gray's pockets. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 22.

They found no gun.

After searching Gray's pockets, the officers let him go. *See* Pl.'s Resp. to Defs.' Statement of Additional Facts, at ¶ 29 (Dckt. No. 48).

All in all, the interaction didn't take much time. About seven minutes passed between when Officer Kubiak arrived on the scene and when the officers released Gray. *Id.* at ¶ 30.

The record includes bodycam footage from several officers. Gray was wearing jeans and a winter coat with fur trim. *See* Kane Body Cam, at 4:33 (Dckt. No. 45). Officers Kubiak and Kane approached Gray from a distance. *See id.* at 3:59 – 4:15. By the look of things, Gray's outfit was visible, but the officers may have been too far away to get a good look at his face.

2

When the officers approached Gray, they could see black headphones on the ground in front of him. *See id.* at 4:30-34. Gray was then placed in handcuffs and patted down. *See id.* at 4:30 – 5:30. Video footage seems to show several items being removed from Gray's coat pocket, including his cellphone, a set of keys, and a black glove. *Id.* at 5:37 – 6:02.

The City of Evanston has a use of force policy, called "Policy 300." *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 27 (Dckt. No. 41-2). The policy requires officers to "use only that amount of force that reasonably appears necessary given the facts and circumstances perceived by the officer at the time of the event to accomplish a legitimate law enforcement purpose." *Id.* at ¶ 28. Additionally, Evanston policies authorize officers to conduct a pat-down and search pockets in a situation like the one at hand. *Id.* at ¶ 37.

Gray filed suit against the officers and the City of Evanston, bringing three claims.

First, Gray alleges that Officer Kubiak used excessive force when he pointed his firearm at Gray. Gray seeks to hold Officers Kubiak and Kane liable for that use of excessive force. *See* Pl.'s Mem. in Supp. of Pl.'s Mtn. for Summ. J., at 2 (Dckt. No. 32). Second, Gray brings an unreasonable search claim against Officers Kane, Kubiak, Popp, Rosenbaum, and Pogorzelski. *Id.* Third, Gray brings a *Monell* claim against the City of Evanston, claiming that Evanston's "written policies for the use of force and search and seizure authorize unlawful police conduct." *See id.* at 3.

After discovery, the parties filed cross motions for summary judgment. *See* Pl.'s Mtn. for Summ. J. (Dckt. No. 30); Defs.' Mtn. for Summ. J. (Dckt. No. 38). Gray seeks summary judgment on liability (and not damages) against all Defendants on all claims. *See* Pl.'s Mem., at 11 (Dckt. No. 32).

The ruling at hand focuses on Gray's motion for summary judgment (only). This Court will issue a separate ruling on Defendants' motion for summary judgment.

## Legal Standard

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

The Court construes all facts in the light most favorable to the nonmoving party, giving him the benefit of all reasonable inferences. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of

3

the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

A plaintiff has a tough hill to climb on summary judgment. Because the plaintiff bears the burden of proof, he must prove each element to obtain summary judgment. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). To get summary judgment, a plaintiff must run the table, establishing that there is no genuine issue of material fact on any element.

On the flipside, to defeat a plaintiff's summary judgment motion, the defendant simply must show that there is a genuine issue of material fact on at least one of the elements. As the non-movant, the defendant only needs to poke a small hole. *See Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*, 2024 WL 621601, at *8 (N.D. Ill. 2024).

## Analysis

The Court will discuss the excessive force claim and the unlawful search claim, before turning to the *Monell* claim.

The punchline is that Gray is not entitled to summary judgment on any of his claims. On the record at hand, a reasonable jury could conclude that the officers did not use excessive force and did not conduct an unreasonable search. And without a dead ringer on the constitutional claims, Gray cannot get summary judgment on the *Monell* claim, either.

### I.     Excessive Force

Gray's first claim is an excessive force claim. Gray alleges that Officers Kubiak and Kane subjected him to an unlawful seizure in violation of the Fourth Amendment. *See* Pl.'s Mem., at 3 (Dckt. No. 32).

More specifically, Gray asserts that Officer Kubiak's use of force was unreasonable when he pointed his firearm at Gray and ordered him to the ground. *Id.* at 4. Gray believes that Officer Kane is liable for Officer Kubiak's use of excessive force because Officer Kane instructed Gray to "spread his arms like superman." *Id.*

The Fourth Amendment prohibits "unreasonable" seizures. *See* U.S. Const. amend. IV. Force isn't always unreasonable. The Fourth Amendment allows a police officer to use force in appropriate situations. *See Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) ("An officer who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest[.]"). But it depends on the circumstances. The reasonableness of the use of force depends on the facts.

The reasonableness of the amount of force depends on the context, too. An officer may not use "greater force than [is] reasonably necessary" – *i.e.*, an officer may not use excessive force. *See Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) (quoting *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987)).

The inquiry into the reasonableness of force is objective. *See Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009). The question is whether, "in light of the facts and circumstances that confronted the officer (and not 20/20 hindsight), the officer behaved in an objectively reasonable manner." *See Padula v. Leimbach*, 656 F.3d 595, 602 (7th Cir. 2011) (quoting *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010)).

The Seventh Circuit has held that "gun pointing when an individual presents no danger is unreasonable and violates the Fourth Amendment." *Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009).

But "no danger" is a pretty big caveat. Sometimes it is hard to know if there is "no danger." *Id.* Especially in the heat of the moment, when your neck is potentially on the line and on the receiving end of any danger. Sometimes figuring out if there is "no danger" is the whole point of the interaction with the police.

It is all too easy to declare that there was "no danger" after knowing how the story ended. Judges have that luxury. Police officers in the heat of the moment do not. Officers encounter real-world situations in real-time, with blood pumping and adrenaline flowing, as events unfold right in front of them. Officers live the story without the benefit of knowing the final chapter.

For that reason, police officers may point their guns at individuals "when there *is* reason to fear danger." *Id.* at 346 (emphasis in original). None of those words require certitude. A police officer can point a weapon when there is "reason" to "fear" potential "danger." *Id.*

Reasonable suspicion isn't the world's highest bar, and for good reason. After all, law enforcement is responsible for public safety. Sometimes police officers have to act based on imperfect information, in the interest of keeping people safe. There are real-world consequences if police officers are too tentative to act.

A police office doesn't have to be *right*. But a police officer does have to be *reasonable*. At the end of the day, it depends on the facts at hand. "The reasonableness of brandishing a weapon depends on the unique facts of each case, from a boots-on-the-ground perspective." *Cruz v. City of Chicago*, 2021 WL 2645558, at *5 (N.D. Ill. 2021).

An anonymous tip sometimes can provide the basis to stop a person. "When an anonymous caller provides a tip to the police, the tip can serve as the basis for reasonable suspicion if it is 'reliable in its assertion of illegality, not just in its tendency to identify a determinate person.'" *United States v. Swinney*, 28 F.4th 864, 866 (7th Cir. 2022) (quoting *Florida v. J.L.*, 529 U.S. 266, 272 (2000)).

"[T]he Supreme Court has 'identified three factors that make an anonymous tip reliable enough to create reasonable suspicion: the tipster (1) asserts eyewitness knowledge of the reported event; (2) reports contemporaneously with the event; and (3) uses the 911 emergency system, which permits call tracing.'" *Id.* at 866–67 (quoting *United States v. Watson*, 900 F.3d 892, 895 (7th Cir. 2018)).

Here, a 911 caller reported that a person was in the park brandishing a handgun, wearing a dark jacket and jeans. That description matched the outfit that Gray was wearing. *See* Pl.'s Resp. to Defs.' Statement of Additional Facts, at ¶¶ 4, 6, 12 (Dckt. No. 48).

Officers Kubiak and Kane could rely on the 911 caller's report as long as the report had "sufficient indicia of reliability." *Navarette v. California*, 572 U.S. 393, 397 (2014). A reasonable juror could find that the indicia of reliability were present here.

The tipster called a 911 hotline through a traceable system. *See* Pl.'s Resp. to Defs.' Statement of Additional Facts, at ¶ 15 (Dckt. No. 48). The caller provided a contemporaneous eyewitness account of an individual with a gun in the park. *Id.* at ¶¶ 4, 6. And the officers found someone in the right spot, at the right time, wearing the right type of clothing.

As Gray notes, the caller reported the gun-carrying individual as a white male, whereas Gray is a black man. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 1 (Dckt. No. 41-2). That's not enough to justify summary judgment in Gray's favor.

There are facts on the other side of the ledger. The caller's description of the individual's outfit and location matched Gray's outfit and location. *See* Pl.'s Resp. to Defs.' Statement of Additional Facts, at ¶ 12 (Dckt. No. 48). Plus, Gray was carrying black headphones, which could have resembled a firearm from a distance. *Id.* at ¶ 20. The fact that Gray is black, not white, is not reason enough to declare the seizure unreasonable at the summary judgment stage.

A reasonable juror could find that Officers Kubiak and Kane had a reasonable suspicion, based on the 911 call, that Gray was brandishing a firearm. *See Swinney*, 28 F.4th at 867 (concluding that an anonymous tip had enough indicia of reliability to serve as the basis for reasonable suspicion when the police saw a man wearing the outfit described by an anonymous tipster, in the location described by the tipster); *United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003) ("[P]olice observation of an individual, fitting a police dispatch description of a person involved in a disturbance, near in time and geographic location to the disturbance establishes a reasonable suspicion that the individual is the subject of the dispatch.").

An individual's appearance does not need to exactly match the description provided by the 911 caller to give rise to reasonable suspicion. That is, the existence of discrepancies does not preclude an inference of reasonable suspicion. *See, e.g.*, *United States v. Adair*, 925 F.3d 931, 936 (7th Cir. 2019) (holding that the Fourth Amendment permitted the police to search a suspect whose appearance mostly matched a description provided by a 911 caller, even though the suspect wasn't wearing exactly the outfit described by the caller); *United States v. Howell*, 958 F.3d 589, 598 (7th Cir. 2020) (opining that the Fourth Amendment allowed an investigatory

stop when the 911 caller's description "roughly matched" the appearance of the investigated individual).

The Fourth Amendment does not require a perfect match between the description of the person of interest and the appearance of the person who is detained. After all, the standard is reasonable suspicion, nothing more. Both words – "reasonable" and "suspicion" – reflect the existence of wiggle room. Police officers do not violate the Constitution simply because the match is imperfect.

Here, a reasonable jury could find that there was reasonable suspicion, even if Gray's race (on the one hand) and the race of the suspect indicated by the 911 caller (on the other) did not match. Especially in the heat of the moment, during a search for a person with a gun.

All in all, a reasonable jury could find that the officers had reasonable suspicion that Gray had a firearm. On this record, that finding is within the field of play.

If a reasonable jury could make that finding, then a reasonable jury could conclude that the use of force was reasonable under the Fourth Amendment. That is, a reasonable jury could find that the officers were entitled to brandish their weapons because the officers reasonably suspected that Gray had a firearm.

In sum, Gray is not entitled to summary judgment on his excessive force claim because a reasonable jury could conclude that the force was reasonable.

## II. Unlawful Search

Next, Gray brings a claim about the search of his person. He claims that the search violated the Fourth Amendment because it was "obvious" that he didn't have a firearm in his hand. *See* Pl.'s Mem., at 7–8 (Dckt. No. 32).

Gray challenges various aspects of the search. He contends that Defendants' use of handcuffs was improper. *Id.* at 8. He also argues that Officers Kane and Popp had no justification to search his pockets. *Id.* And he believes that Officers Kubiak and Rosenbaum had no reason "to hold their firearms at the ready" once he was handcuffed.[1] *Id.*

"[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *See Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

The Fourth Amendment requires reasonableness when it comes to the scope of the search, in time and space. Courts measure the "officer's conduct against a standard of 'objective reasonableness,' that is 'the perspective of a reasonable officer on the scene, rather than with the

---

[1] Plaintiff devotes almost no attention to the claim against Officer Kubiak and Rosenbaum when it comes to the unreasonable search claim. Plaintiff devotes only one sentence to the topic in his brief. *See* Pl.'s Mem., at 8 (Dckt. No. 32). That's bare bones, at best. The argument is too skeletal, which is an independent basis to deny the motion for summary judgment for those two Defendants.

20/20 vision of hindsight.'" *Howell v. Smith*, 853 F.3d 892, 898 (7th Cir. 2017) (quoting *Graham*, 490 U.S. at 396).

Courts "use a sliding-scale approach when addressing the reasonableness of an investigatory stop" (also known as a *Terry* stop). *See United States v. Bullock*, 632 F.3d 1004, 1015 (7th Cir. 2011). "Determining whether such an investigatory detention is constitutional requires balancing the governmental interest in the seizure against the degree to which it intrudes on an individual's personal liberty." *Matz v. Klotka*, 769 F.3d 517, 522 (7th Cir. 2014).

The Court will start with the use of the handcuffs, before addressing the search of his pockets.

### A. Handcuffs

The first question is whether a reasonable jury could conclude that it was reasonable under the circumstances to place Gray in handcuffs.

The Seventh Circuit has expressed skepticism about the use of handcuffs during a *Terry* stop. *See, e.g.*, *Mwangangi v. Nielsen*, 48 F.4th 816, 827 (7th Cir. 2022) ("While there is no categorical rule that an officer's decision to place a suspect in handcuffs always transforms the interaction from a *Terry* stop into an arrest, it is the 'rare case' in which 'common sense and ordinary human experience convince us that an officer believed reasonably that an investigative stop could be effectuated safely only in this manner.'") (quoting *United States v. Glenna*, 878 F.2d 967, 973 (7th Cir. 1989)); *United States v. Howard*, 729 F.3d 655, 661 (7th Cir. 2013) ("Handcuffs in a *Terry* stop and frisk are not and should not be the norm.").

Still, the Seventh Circuit has "upheld the use of handcuffs to ensure officer safety in a *Terry* stop of brief duration." *Ramos v. City of Chicago*, 716 F.3d 1013, 1018 (7th Cir. 2013). "[T]here is a limited set of circumstances in which handcuffs are appropriate without converting a *Terry* stop into a full arrest, and chief among them is officer safety and the possibility of the presence of a weapon." *United States v. Vaccaro*, 915 F.3d 431, 436 (7th Cir. 2019) (cleaned up).

Here, a reasonable jury could find that Officers Kane and Popp acted reasonably when they placed Gray in handcuffs.

Remember why the officers were on the scene in the first place. The police department received a tip about a man with a firearm. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 5 (Dckt. No. 41-2).

Consider what the officers saw when they arrived at the beach. They saw Gray in the right spot, wearing clothes that matched the description. The outfit was a fit – it fit the description of the person with a gun.

Before Officers Kane and Popp applied handcuffs, Officer Kubiak observed Gray holding a black object in his hand. *See* Pl.'s Resp. to Defs.' Statement of Additional Facts, at ¶ 13 (Dckt. No. 48).

Guns are black objects.

On the record at hand, a rational jury could find that a reasonable officer would have believed that Gray was brandishing a firearm. Based on the threat of a firearm, a reasonable jury could conclude that the use of handcuffs was appropriate. A finding of reasonableness is within the field of play for the jury, especially given the short amount of time of the restraint. Gray was cuffed for only a few minutes.

Viewing the facts in the light most favorable to Defendants (as the nonmovants), a reasonable jury could find that use of the handcuffs was necessary and minimally intrusive. Therefore, Gray is not entitled to summary judgment on his Fourth Amendment claims about the use of handcuffs.

### B. Search of the Pockets

The next question is whether a reasonable jury could conclude that it was reasonable to search Gray's pockets.

A frisk is "a limited pat down of the suspect's outer clothing to search for weapons." *United States v. Howell*, 958 F.3d 589, 598 (7th Cir. 2020). "The power to conduct a *Terry* stop does not automatically give police the power to frisk the subject for weapons." *Howard*, 729 F.3d at 662. The legitimacy of a frisk is a "separate inquiry." *Id.*

The Fourth Amendment permits a frisk "only if a police officer can 'point to specific and articulable facts' indicating 'that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous.'" *See Howell*, 958 F.3d at 598 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 24–25 (1968)).

"An officer is not justified in conducting a general exploratory search for evidence under the guise of a stop-and-frisk." *United States v. Brown*, 188 F.3d 860, 866 (7th Cir. 1999). A frisk must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry*, 392 U.S. at 29.

*Terry* entitles an officer to pat down a jacket and feel for a lump in the person's pocket. *See Minnesota v. Dickerson*, 508 U.S. 366, 379 (1993). "An officer encountering a small, hard object may have reasonable suspicion to believe that object is a weapon[.]" *United States v. Ford*, 872 F.3d 412, 417 (7th Cir. 2017) (citations omitted).

Officers Kane and Popp patted down the outside of Gray's coat and then searched his pockets. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 22 (Dckt. No. 41-2). Based on the record, a reasonable jury could conclude that the officers had reason to do so in light of the call indicating that someone resembling Gray's appearance had a firearm.

9

Gray was wearing a heavy winter coat (it was March in Chicagoland, after all). A bulky coat can conceal a weapon. *See, e.g.*, *United States v. Douglas*, 964 F.2d 738, 741 (8th Cir. 1992) (opining that a long winter coat could have concealed a weapon); *United States v. Stroman*, 500 F.3d 61, 64 (1st Cir. 2007) ("[A]n officer approaching a suspect in connection with a break-in is entitled to ensure that no weapons are hidden underneath a heavy leather coat.").

Body-camera footage from the incident appears to show the officers removing something from Gray's pocket after patting him down. *See* Kubiak Body Cam, at 4:30-46 (Dckt. No. 45). Based on the record, a reasonable jury could find that Defendants searched Gray's pockets because they felt a weapon-like lump.

In sum, a rational jury could find that the frisk was appropriately limited in scope to determine whether Gray had a weapon. Therefore, Gray is not entitled to summary judgment on his claim about the search of his pockets.

### III. *Monell*

Gray's final claim is a *Monell* claim (*i.e.*, a claim based on a municipality's policy, pattern, or practice). *See* Pl.'s Mem., at 9 (Dckt. No. 32).

Gray asserts that Evanston's use of force policy is insufficient. *Id.* He also contends that Evanston fails to train its police officers that pointing a firearm at a suspect is a use of deadly force. *Id.*

A plaintiff with a *Monell* claim must prove three elements: "policy or custom, municipal fault, and 'moving force' causation." *Bohanon v. City of Indianapolis*, 46 F.4th 669, 676 (7th Cir. 2022). Defendants argue that Gray's claim fails at the third element – causation. *See* Defs.' Resp., at 13 (Dckt. No. 41).

"[A] plaintiff bringing a *Monell* claim must prove that the municipality's action was the 'moving force' behind the federal rights violation." *Bohanan*, 46 F.4th at 675. The moving-force causation standard is "rigorous" to "guard[] against backsliding into respondeat superior liability." *See First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021).

"[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Orozco v. Dart*, 64 F.4th 806, 824 (7th Cir. 2023) (citations omitted).

A policy cannot cause a constitutional violation if no constitutional violation took place. *See, e.g.*, *Merritt v. Baker*, 668 F. App'x 164, 166 (7th Cir. 2016) ("[A] claim under *Monell* . . . cannot be supported if . . . no constitutional violation occurred in the first place."); *Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("If the plaintiff fails to prove a violation of his constitutional rights in his claim against the individual defendants, there will be no viable Monell claim based on the same allegations.").

In other words, if the officers didn't commit a constitutional violation, then an Evanston policy, pattern, or practice could not have caused a constitutional violation.

As explained above, a reasonable juror could find that no constitutional violation occurred. So, a reasonable juror could necessarily find that Gray has failed to prove the moving-force causation element for his *Monell* claim. Therefore, Gray is not entitled to summary judgment on his *Monell* claim.

\* \* \*

One final note. Defendants filed their own motion for summary judgment. In addition to raising arguments on the merits, Defendants assert qualified immunity. *See* Defs.' Mem. in Supp. of Defs.' Mtn. for Summ. J. (Dckt. No. 39). That motion remains pending.

When parties file cross motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2720 (4th ed. 2024).

In the ruling at hand, the Court considered only whether summary judgment should be granted for Gray, and against Defendants. This Court conducted a narrow inquiry. The question was whether the record is so lopsided that Gray must win, here and now.

The Court resolved Gray's summary judgment motion without considering qualified immunity. The Court did not address all of the merits-based arguments made by Defendants, either. The Court is keeping its powder dry on these issues, for now.

The Court will rule separately on Defendants' motion for summary judgment. Nothing in this ruling is meant to suggest the likely outcome of the Court's ruling on that motion. A ruling on one motion does not necessarily dictate a ruling on another motion.

## Conclusion

For these reasons, the Court denies Gray's motion for summary judgment (Dckt. No. 30). Defendants' motion for summary judgment (Dckt. No. 38) remains under advisement.

Date: July 22, 2024

Steven C. Seeger
United States District Judge